No. 7566.

STATE EX REL. MORRIS RANGER · VS. MAYOR AND ADMINISTRATORS OF THE
CITY OF NEW ORLEANS.

It is the privilege of individuals to make contracts; but it belongs to the government exclu-
sively to provide the machinery for, and the modes and manner of, enforcing the contracts
so made.

Obligations resulting from lawful contracts are not only binding on the parties, but the State
itself cannot directly or indirectly impair them or lesson their value.

The control of the State over the manner of executing or enforcing obligations, is absolute,
*provided only,* that in changing remedies or modes of execution, the right secured by the
obligation be not impaired or lessened in value.

Act No. 5 of 1870, *in so far as it requires registry,* as a prerequisite to payment or the levy of
a tax, does not impair the obligation of the contract between the city and its bondholders.

APPEAL from the Third District Court, parish of Orleans.  *Monroe,*
J.

D. C. Labatt for relator and appellee :

First—That the laws in existence when these railroad bonds were issued
in 1854 were ample to authorize the city to levy taxes to meet them
at their maturity, and formed part and parcel of the " contract "
which was protected by the prohibition in the Federal Constitution
against the "impairment of the obligation," and consequently
could not be repealed or affected by Act No. 5 of 1870.

Second—That while it is reserved to the State legislatures, in a limited
and well-defined class of cases, to alter and change the character of
" remedies " for the enforcement of contracts, it is essential that two
things concur :

1.  An adequate and sufficient remedy must be left as a substitute.

2.  The exercise of the substituted remedies must be lodged with the
courts of justice, and not in the discretion of the defaulting debtor.

Third—That the subject matter of Act No. 5 of 1870 attempts to repeal
the various writs of *fi. fa.,* mandamus, contempt, and other orders
necessary to the jurisdiction of the courts on past contracts, and to
furnish in their stead inadequate substitutes which tended to clog
and hamper creditors on absolute judgments against the city of
New Orleans from enforcing their legal rights, and such legislation
being obnoxious to the Federal restriction on the States, was null
and void.

Fourth—That if the subject matter of a statute be unconstitutional, all
the means provided to carry out such legislation must fall with the
nullity of the statute, and it was obligatory on the court to examine
and declare the unconstitutionality of the act *quoad* relator's pre-
vious contract.

Fifth—That it was incumbent on defendant to show by its return to the

*mandamus* that "registry" was the only ceremony preliminary to the *payment* of relator's judgment, whereas the provisions of the act show that money for that purpose could not be gathered by taxation, unless the judgments were registered, after which it was left discretionary with the administrators to appropriate it or not.

Sixth—That it is settled, that no "legislature of a State can make a law preventing the right to the legal remedies, upon a contract lawfully made and binding on the party to it, without exceeding its legitimate powers," and

Seventh—"Where a statute does not leave a party a substantial remedy according to the *course of justice*, as it existed at the time the contract was made, but shows on its face an intention to clog, hamper, or embarrass the proceedings to enforce the remedy so as to destroy it altogether, and thus impair the contract so far as it is in the power of the legislature to do it, such statute cannot be regarded as a mere regulation of the remedy, but is void." 15 Wis. 28 ; 6 Greenl. 12 ; 21st Ind. 144 ; 4 Wall. 535.

E. Howard McCaleb, City Attorney, and E. H. Farrar for defendants and appellants :

Act No. 5 of the extra session of 1870 has provided the mode of executing judgments against the city of New Orleans. The relator does not pretend that he has complied with the provisions of that act. On the contrary, he freely admits that his judgment has never been registered, and that he has never applied to the City Council for payment of the same under the provisions of that act. The judgments were all rendered long subsequent to the passage of the act, and the relator is plainly bound by the provisions thereof.

There is no law in Louisiana, and there never was any law in Louisiana, which allows a court to compel the levy and collection of a special tax to pay a judgment against the city of New Orleans.

---

The opinion of the court was delivered by

SPENCER, J. Relator having obtained judgments against the city of New Orleans, and issued *fi. fa.* thereon, which were returned *nulla bona*, took the present proceeding to obtain a peremptory mandamus to compel the city authorities to levy and collect a special tax to pay his said judgments.

The city resists this demand on the ground that relator has not registered his judgments as required by Act No. 5 of the extra session of 1870. Plaintiff's judgments are based upon bonds of the city issued in 1854, in aid of certain railroads. Relator contends that the provisions of said Act No. 5 of 1870 are inoperative and void as to him,

since the effect thereof is to impair the obligation of the contracts made with him in 1854. The principles of law involved are now well established. The difficulty is in their application to the facts of each case.

It is the privilege of individuals to make contracts. But to provide the machinery for, and the modes and manner of, enforcing the contracts so made, belongs exclusively to the government. The obligations resulting from lawful contracts are not only binding on the parties, but the State itself cannot directly or indirectly impair them or lessen their value.

But the control of the State over the manner of executing obligations is absolute, *provided only* that in changing remedies or modes of execution the right secured by the obligation be not impaired or lessened in value.

What were plaintiff's rights and remedies under the laws in force in 1854? Does the Act No. 5 of 18.0, *as, and to the extent, it is now invoked* by the city, impair or lessen the value of plaintiff's claim against the city?

We understand that the sole ground upon which the city resists the relator's demands is that it (the city) is under no obligation to levy a tax to pay relator until he has caused his judgment to be registered, as required by Act 5 aforesaid.

The only question, therefore, now before us is, does that act *in so far as it requires registry*, as a prerequisite to payment or the levy of a tax impair the obligation of the relator's bond issued in 1854? The act under which these bonds were issued made *no provision for a special tax* to pay them. So in that regard, relator occupied the relation of an ordinary creditor. The city, by the laws in force in 1854, was under no obligation to levy a special tax for these bonds. Their payment was to be effected, like all other presecured debts of the city, by *fieri facias*, if property could be found, or by being carried into the annual budget, and a tax levied to pay them, in the ordinary and customary administration of the city's affairs. If the city failed to do this, the creditor could compel performance by mandamus.

It may be that the Act No. 5 of 1870 contains provisions, *which if invoked* would necessitate our declaring them unconstitutional. But "sufficient unto the day is the evil thereof." We are now only called upon to pass upon the constitutionality of that section requiring registry. If we find that to be invalid as impairing the obligation of a contract, we will then have to decide other and ulterior questions; but if we find it to be a mere change of remedy, not impairing the value of plaintiff's right, then we may halt, and require the relator to comply with it before seeking ulterior relief. For aught that we know, for aught that appears by the record, the city will pay relator's claim immediately upon its registry. Act 5 directs it so to do if there are funds, as to which we are not ad-

vised. If there are no funds, the act requires the judgment to be put upon the next budget, and a tax sufficient to pay it to be levied.

We cannot presume that the city will fail in its duty in this regard. On the contrary, we must presume that upon relator registering his judgment, the city will at once pay it, or provide for its payment by levying a tax in due course of administration. Nor can we presume that the city will levy an insufficient tax, or hold itself bound in regard to relator's debt by the limitations imposed on its taxing power by the premium-bond act of 1876, if that limitation is unconstitutional.

The requirement of the registry of all judgments before payment, or before levying taxes to pay them, seems to us to be a wise and useful provision of law, tending to restrain and check the reckless levy of taxes, and to afford, in compact form, a correct knowledge of the city's liabilities. The formality is neither onerous nor expensive to the judgment creditor, and in no wise delays or retards the progress of his measures to secure payment.

So far as we can see, it takes away from him no pre-existing right, nor does it render less effective any pre-existing remedies. In a word, it does not appreciably lessen the value of his right or impair its obligation. The requirement is one made in the interest of economy and the orderly conduct of the city's affairs. We apprehend that no court would grant relator's prayer and order a special tax, if the city tendered payment upon the condition that relator first register his judgment. It would, in such case, certainly be held to be a regulation which did not operate any impairment of plaintiff's rights. We think the relator is premature in his action. He should first register his judgments, and then if payment is not made, or adequately provided for in the next tax-levy, proceed to compel it.

It is therefore ordered and decreed that the judgment appealed from be reversed, and it is now ordered and decreed that relator's suit be dismissed at his costs.

---

## On Rehearing.

WHITE, J. We granted a rehearing, not because we doubted the correctness of our former conclusion, but because owing to the gravity of the question we thought it well that an opportunity should be ours to give the issues a second examination before making our decree final. On the rehearing we have had, both orally and by brief, renewed and able discussion, and our views remain unchanged. The effect of our re-examination has strengthened our conviction as to their entire correctness. We have expressed them fully in the opinion hitherto filed, and we see no necessity to reiterate them.

It is therefore ordered that our former decree remain undisturbed.